Adkins Properties, Lola Armstrong, Trustee v. Commissioner.
Adkins Properties v. Commissioner
Docket No. 111479.
United States Tax Court
1943 Tax Ct. Memo LEXIS 80; 2 T.C.M. (CCH) 940; T.C.M. (RIA) 43461; October 19, 1943
*80 Certain persons in 1934 came into ownership as tenants in common of an undivided one-third interest in and to a seven-eighths oil, gas and mineral lease covering some 20 acres of land in Gregg County, Texas. Oil was being produced on the lease. These persons on February 26, 1934 joined in the execution of a Declaration of Trust naming the secretary of one of the grantors as trustee, in which title to their respective undivided interests totaling one-third of seven-eighths interest in the lease was conveyed to the trustee. The trust was to last for a period of 25 years or as long thereafter as oil and gas should be produced on the lease. Provision was made for a successor trustee, centralized management was vested in that trustee as representative of the beneficial owners, the trust was secured from termination or interruption by the death of any owner of a beneficial interest, transfer of an entire beneficial interest could be made without affecting the continuity of the trust, personal liability of the beneficiaries was limited to the amount of their beneficial interest in the trust, and certificates of beneficial ownership were to be issued to each beneficiary on forms described *81 in the Declaration of Trust. Held, that notwithstanding the actual operation of the lease was in the hands of persons selected by all the owners of the lease, including petitioner as the owner of a one-third fractional interest, and notwithstanding the actual activities of the trustee in the taxable years consisted in collecting the trust's portion of the oil runs from the pipe line companies, paying its part of the operating cost of the lease, taxes, etc., and distributing to the holders of its beneficial certificates their respective portions of the net proceeds, because of the broad powers granted to the trustee in the Declaration of Trust, petitioner is an association taxable as a corporation. W. B. Harrell, Esq., Republic Bank Bldg., Dallas, Tex., for the petitioner. Samuel G. Winstead, Jr., Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion This proceeding involves the determination by the respondent of deficiencies in income and excess-profits taxes and penalties against petitioner as an association taxable as a corporation for the calendar years 1936 to 1940, inclusive, in amounts as follows: Excess-
Income
Profits
Year
Tax
Penalty
Tax
Penalty
1936
$ 754.00
$188.50
1937
1,006.26
251.57
$145.37
$36.34
1938
953.94
238.48
20.98
5.25
1939
589.10
147.28
1940
327.21
81.80
*82 The sole issue is whether petitioner is an association taxable as a corporation. If it is, the deficiencies in taxes and penalties will be approved, and if petitioner is not an association taxable as a corporation, the deficiencies in taxes and penalties will be disallowed. Findings of Fact Adkins Properties was organized as a trust estate under a Declaration of Trust made and entered into on February 26, 1934, in the town of Longview, Gregg County, Texas, with Lola Armstrong, who resides at Longview, as its trustee. No income and excess-profits tax returns were filed by Adkins Properties or Lola Armstrong as its trustee with the Collector for the Second District of Texas for the calendar years 1936 to 1940, inclusive. On or about January 20, 1933, Sallie Bell, Isaiah Adkins, Jesse Adkins, Roberta Gray, Lucille Holland and Mary Loftis, all negroes and hereinafter sometimes referred to as the Adkins heirs, employed Angus G. Wynne, who had been practicing law in East Texas for about 25 years to bring a suit against one H. J. Porter and others for the recovery of an undivided interest in an oil and gas lease covering about 20 acres of land, a part of the William P. Chism Survey in *83 Gregg County, Texas. It was agreed between Wynne and his clients that Wynne was to pay his own expenses in connection with the suit and was to have as his fee one-half of whatever he recovered. Wynne took the case and filed a lawsuit in the District Court of Gregg County, Texas, styled Sallie Bell et al., v. H. J. Porter et al., Docket No. 8698-A. The Adkins heirs were all married persons except Lucille Holland who was a widow. Lola Armstrong is now and has been for more than 20 years Wynne's secretary. The land covered by the above-mentioned oil and gas lease was at the time of the suit and still is producing oil in commercial quantities. On April 15, 1932, one of the defendants to the suit, M. K. Towns, representing himself as "owner" of the abovementioned oil and gas lease, entered into an agreement with R. H. Dearing & Sons, a partnership, to drill three wells on the 20 acre tract. The partnership was to be paid $3,000 in cash for each well upon the completion thereof and an additional $19,000 for each well to be paid out of 7/16ths of the first oil produced, saved and marketed. The agreement, among other things, provided: Owner further obligates himself so long as oil *84 can be produced in paying quantities from the premises above described, to operate said premises for the production of oil until the contingent payments out of oil to be made contractors are fully liquidated, satisfied and discharged, and Owner agrees to deliver oil to be applied to the satisfaction of said contingent payments free of cost into the pipe line of the purchaser of the production from said premises, and without any expense whatever to contractors, and until said contingent payments are discharged Owner agrees to keep said premises free and clear of all liens and encumbrances. Early in 1934 a judgment was entered in favor of the plaintiffs in the above docket number for an undivided one-third interest in the lease, which judgment is in part as follows: After hearing the evidence and the argument of counsel, the Court is of the opinion that the law and the facts are with the plaintiffs as against the defendants H. J. Porter, M. K. Towns, Trustee, M. K. Towns, individually, H. G. Nelms and J. S. Wheless, Jr., and that said plaintiffs are entitled to recover, as against the above-named defendants, the title and possession of an undivided one-third interest in and to the *85 seven-eighths oil, gas and mineral lease covering the hereinafter described real estate, from the date of the first oil run; and it being agreed, in open court, by the plaintiffs and by the defendants above named, that the oil, gas and mineral lease which was held in the name of M. K. Towns, as trustee, or M. K. Towns, individually, was, in truth and in fact, held one-third for John G. K. Towns and two-thirds for H. J. Porter, H. G. Nelms and J. S. Wheless, Jr., as attorneys in fact and trustees for themselves and the plaintiffs above named - one-half of the attorneys in fact, H. J. Porter, H. G. Nelms and J. S. Wheless, Jr., and one-half to the plaintiffs herein; and it being stated in open court that the parties hereto had agreed upon a settlement, in accordance with the judgment of the Court that the plaintiffs recover of and from the defendants M. K. Towns, M. K. Towns. Trustee, H. J. Porter, H. G. Nelms and J. S. Wheless, Jr., an undivided one-half of two-thirds undivided interest in and to the seven-eights oil, gas and mineral lease formerly held by M. K. Towns and which had been assigned to the other defendants herein, and the defendants having settled with the plaintiffs for *86 the oil run up to February 1, 1934, this recovery to date from February 1, 1934, and as the plaintiffs made no claim against the one-third interest of John G. K. Towns in said oil, gas and mineral lease covering the hereinafter described 20 acres of land, that said plaintiffs take nothing as against the said undivided one-third interest of John G. K. Towns, but that said interest be confirmed. It further appearing to the Court that the intervenor. Angus G. Wynne, under his contract with the plaintiffs herein, is entitled to recover an undivided one-half of the one-third recovered by the plaintiff or an undivided one-sixth of the said oil, gas and mineral lease and all oil which has been run therefrom, the Court gave judgment to said intervenor, Angus G. Wynne, for his undivided interest therein. By agreement between Wynne and his clients the one-third interest thus recovered was owned in the following proportions: Sallie Bell
69/720ths of the 1/3rd
Isaiah Adkins
69/720ths of the 1/3rd
Jesse Adkins
69/720ths of the 1/3rd
Roberta Gray
69/720ths of the 1/3rd
Lucille Holland
69/720ths of the 1/3rd
Mary Loftis
10/720ths of the 1/3rd
Sub-total
355/720ths of the 1/3rd
Angus G. Wynne
365/720ths of the 1/3rd
*87 The court did not set aside the drilling contracts made by Towns and R. H. Dearing & Sons. A few days before the judgment was entered Wynne and the Adkins heirs had an understanding as to what they would do with the interests recovered in the oil and gas lease. Wynne told the Adkins heirs that he had just recovered some property for other negro clients, that as soon as their interests were shown on the records, in their names, the lease brokers and lease hounds, as they are called, would descend upon them, and the first thing they knew the negroes had sold out and had nothing left, except the ones he had prevailed on not to sell. Wynne further told them that there was just one way to handle the matter and that was to fix it so their interests would not stand in their names, if they did not, interest and ownership would be scattered all over the oil field and they would have trouble handling their property, that the way to conserve their interests and keep them from selling it to all who wanted to buy was to place it in the hands of some trustee to keep for them. He told them that he would put his interest in too, and that proper books would be kept. Wynne also told them his secretary, *88 Lola Armstrong, would keep the books and she would receive their money and keep records for them just like she did for him and they would come in and get their money when they wanted it. The result was that on February 26, 1934, Wynne and the Adkins heirs executed an instrument styled "The Adkins Properties Declaration of Trust and Agreement," the material provisions of which are as follows: This Agreement and Declaration of Trust made and entered into this the 26th day of February, 1934, in the town of Longview, Gregg County, Texas, WITNESSETH: WHEREAS, Sallie Bell and her husband, Tom Bell, Isaiah Adkins and wife, Arlillian Adkins, Jesse Adkins and wife, Savannah Adkins, Roberta Gray and husband, Jim Gray, Lucille Holland, a widow, and Mary Loftis and her husband, Willie Loftis, and Angus G. Wynne are the owners of an undivided one-third (1/3) interest in a certain oil, gas and mineral lease covering 20 acres of land in Gregg County, Texas, and described as follows: * * * * *
WHEREAS, said parties have agreed to form a Trust Estate, known as the Adkins Properties, and to enter into a deed and assignment with reference thereto so that the said Trust Estate, which own the oil, *89 gas and mineral lease covering the above described property and the signers hereof, shall hold certificates of interest, issued hereunder, without any further claim upon said oil, gas and mineral lease, other than as provided herein. The holders of such certificates to have only the interest in and claims to the Trust Estate as provided in this agreement and in such certificates, or shares, and none other, and for the purpose of handling said Trust Estate we, the above named parties, do sell, transfer and convey to Lola Armstrong as our Trustee, all of our interest in and to the oil, gas and mineral lease covering the above described property, to hold in trust for us for the full term of twenty-five (25) years, to hold and administer such oil, gas and mineral lease and all receipts therefrom, and all the oil, gas and other minerals which may be produced under the terms of said lease, with full power and authority to collect for oil runs, to make contracts, drill wells, sell oil, sign division orders, make contracts to drill wells, payable out of oil produced from said lease, to make drill contracts, partition agreements, collect money for the oil sold and to do all things with reference *90 to such lease, which we, or any of us, could do, save and except he is not to sell said lease, nor any part thereof, without the written consent of all and each of the signers to this instrument, and we ratify and confirm any and all of his acts with reference to development of said lease, the sale of the oil therefrom, the collection of the money for such oil, the signing of division orders, the partitioning of such lease and any and all things which he may do with reference to such lease, except the sale of the lease itself, and we agree that we shall look only to our Trustee and that any pipe line company which might run the oil from said lease shall be free to pay to our Trustee for any oil which might be due to us from our undivided one-third (1/3) of said lease and that our Trustee will partition the same among us as our certificates, or share, entitle us to receive, and for that purpose we place the said property in the hand of our Trustee and do sell, transfer and convey said lease to the Trustee in trust, as above set out, and subject to the stipulations hereinafter set forth as follows: The Trustee appointed herein shall act for the full term of 25 years, and as long thereafter *91 as oil, gas and other minerals are produced from the said lease. Should the Trustee herein named die or refuse to act further then in the event we do not agree among ourselves within thirty days as to another Trustee the District Court of Gregg County, Texas, shall appoint a Trustee to act for us in the handling of said property. The term "Certificate Holder" shall mean share holder and shall be taken to mean the identical person to which a certificate, or share, stands upon the books of this Trust. The term "Trust Estate" shall mean all property on this lease, the oil produced therefrom and the proceeds of such oil. It is specifically and fully understood that the Trustee is the owner of the Trust Estate and the property thereof, and in all matters pertaining to this Trust said Trustee is to have all power and discretion. We are placing this property in the hands of the Trustee with full and unlimited power of management and control for our use and benefit, and no Certificate Holder or interest holder, hereunder shall have any control as to the acts of said Trustee, though the Trustee may call any of the signers hereto into consultation if he desires. The Trustee, in his capacity, *92 shall be designated as the Adkins Properties, and under that name, so far as practicable, may do all things as under this Trust created, and may have and administer the Trust Estate, shall sue and be sued, shall take and hold title to real estate and all other property, belonging to the Trust Estate and shall execute all instruments in writing. The title to the said oil, gas and mineral lease above described shall rest in and be held by said Trustee and any transfers or conveyances of any kind, character or description which may be at any time made shall be made to the Adkins Properties, or to Lola Armstrong, Trustee for the Adkins Properties, and any and all acts of Trustee with reference to such properties shall include all Certificate Holders and parties of interest, or their legal representatives or assigns as fully as if such holder or signer hereof had consented to each act of the Trustee, and no authority from the Certificate Holder shall ever be required, or is necessary for or prerequisite to any act of the Trustee, his agent or employee. The title, the Adkins Properties, is not intended to note any firm or associated name, but is merely for convenient designation of the *93 Trustee hereunder, or the Trust Estate. The Trustee shall at all times receive and collect for oil run and sold; shall sign division orders, collect interest upon income; pay the expense of administering the Trust Estate, including taxes; make contracts with reference to drilling wells and do all things necessary within his best judgment for the protection of the property; and, if possible, every thirty days issue to the holders of the Certificates hereunder dividend for the oil, or income of the month previous. This Trust is made and the property placed in the hands of our Trustee for greater convenience and efficiency and the Trustee shall have full, absolute and uncontrolled discretionary power, and in such capacity is authorized to contract for, acquire, take title to, hold possession of our said oil, gas and mineral lease, and such other property as it may be necessary to hold to operate the same, and to manage and control the same; sell and dispose of the oil, gas and minerals produced therefrom, and in the preservation and maintenance of said oil, gas and mineral lease; to make any contract with reference thereto, which within his discretion shall be just right to further *94 manage and control the Trust Estate, just as we could do ourselves, and enter into any necessary drilling contracts, which in the judgment of the Trustee may be necessary and expedient; to agree to pay for same out of oil, or if necessary, to sell oil payment, or payments, for drilling wells, and to make any drilling contracts with reference to oil, gas and mineral lease, which he may deem just and right. * * * * *
Every thirty days, if possible, the Trustee shall remit to each of the Certificate Holders herein their pro rata share to the income for the previous month, less such taxes and necessary expense of the lease, it being understood by the signers hereof that there is an oil payment due for the drilling of some of the wells and for the purchase price of the North 10 acres of the 20 acre tract, and that it will be necessary to drill the other wells by oil payments, or the mortgaging of our properties to get the money to drill such wells, and that therefore our income will not be very much until the drilling of the wells has been completed, but whatever amount can be distributed above the actual expense, then the Trustee is to distribute to the Certificate Holders, but no *95 distribution shall be made until all outstanding obligations of our Trustee have been paid, and until it can be paid from our net income. The Trustee shall not have any power or authority to bind any of the signers hereof personally, and they shall be in no way liable for any of his acts beyond any property, which is here placed in his charge, and the income therefrom, and any person or firm contracting with such Trustee, or his agent or employee, shall look only to the Trust Estate for the collection of their debt or charge, because this is not a partnership arrangement; it is merely placing our property in the hands of one Trustee so that it may be handled for the benefit of all. * * * After the acceptance of this Trust by the Trustee he shall immediately issue to Angus G. Wynne a Certificate of Interest showing that the said Angus G. Wynne is the owner of 73/144ths of the Trust Estate, and shall issue and deliver to Mary Loftis a Certificate of Interest showing an undivided 1/72nd interest and to Sallie Bell, Isaiah Adkins, Jessee Adkins, Roberta Gray and Lucille Holland an undivided 69/720ths each, * * *. Such certificates shall not be subject to transfer and cannot be sold, mortgaged *96 or hypothecated in any way, in whole, or in part, they shall not be encumbered or assigned, save and except to the Trust Estate. In case of the death of one of the signers hereof the interest of the deceased party shall vest in his heirs or legal representatives and a new Certificate shall be issued to such heirs or representatives, whether one or more, showing the ownership of such interest, jointly. Such Certificates shall be in the following form: CERTIFICATE OF BENEFICIARY IN ADKINS PROPERTIES This certifies that is the owner of undivided interest in the Trust Estate called the Adkins Properties, created by Agreement of the parties, February 26, 1934, which trust agreement is made a part hereof by reference as if written herein word for word. At the termination of this Trust Agreement, after the payment of all charges and expenses with reference to distributions or otherwise and after the payment of all legal claims against the estate and after all of the terms of this Trust Agreement are complied with, the remainder of the Trust Estate available at that time which be distributed pro rata among and to the then holders of their beneficial participating share. * * *97 * This Certificate is not transferable in any form or manner, save and except in accordance with the stipulations of the Declaration of Trust, the same is non-negotiable and not subject to mortgage and garnishment. In Witness Whereof, the Trustee mentioned in said Agreement and Declaration of Trust has caused this Certificate to be signed, February 26th, 1934. Trustee under Agreement and Declaration of Trust, dated February 26th, creating the Trust therein called Adkins Properties. In case of the loss or destruction of any certificate the Trustee may issue a duplicate Certificate on evidence satisfactory to him that the original has been lost, and upon such terms of indemnity as may be prescribed by him. The death of any Certificate Holder shall not terminate this Trust, nor entitle the parties succeeding to his interest by inheritance or will to require any accounting or partitioning, for such party shall only succeed to the rights of the deceased. * * * Should such Certificate Holder at any time desire to sell said Certificate to the Trust Estate or to any other Certificate Holder he or she shall first offer the Certificate to the Trustee at the price offered by any *98 other bona fide purchaser, who has the cash to pay for such instrument, and if such Trustee does not have the money or cannot purchase the property then the Certificate Holder is next to submit the Certificate to the other holders of Certificates hereunder, and if such Certificate Holders do not desire to purchase, then the Certificate Holder may sell such Certificate to an outside purchaser, but until such Certificate Holder has secured the refusal to purchase in writing from the Trustee and other Certificate Holders no sale can be made of this Certificate, and the Trustee is directed to refuse to pay any money or deliver any property to the Holder of such Certificate when this Agreement has not been complied with. * * * Neither the Trustee nor any Certificate Holder shall be deemed responsible or liable as partners or in any manner liable to each other or to the Trustee, except as herein designated. * * * No bond or surety shall ever be required of the Trustee, but he is expressly authorized to act for us in regards to this particular lease, or any part thereof, which may be set aside to us at any time, but no assessment or other personal liability shall ever be imposed upon the *99 signers hereof, nor the Certificate Holders hereunder. And none of us shall ever be bound for any act of the Trustee beyond the property herein placed in his hands. * * * * *
WITNESS our hands at Longview, Texas, this the 26th day of February, 1934. The parties to the Declaration of Trust and Agreement have treated the trust estate as a distributable trust, and have filed their income tax returns accordingly. Between April 15, 1935 and September 26, 1939, some of the Adkins heirs sold all and some sold a part of their interests in the Trust Estate to Wynne. Wynne tried to discourage them from selling their respective interests but, when they still insisted on selling, Wynne, in some instances, had the selling price approved by outsiders so that the sellers were assured of receiving a reasonable price. Lola Armstrong was not present when the Trust Agreement was drawn. Wynne often put property in her name. Since the Trust Agreement was signed, Lola Armstrong, the trustee, has kept the books, charged each certificate holder with his or her part of the expense or taxes and issued checks every month to the Adkins heirs for what remained for them. She paid the expense bills when she *100 received them from the person who was operating the lease. She acted as a clearing house or bank for the certificate holders' interest. When the Adkins heirs wanted money and did not have any in their account and just had to have it, Wynne told her to let them have it anyhow, and at the end of the year if they were overdrawn it was charged against the next year. Lola Armstrong knew nothing about an oil well or lease, had nothing to do with the actual operation of the lease, hiring employees or selling oil. These things were done by the one selected by the owners to operate the lease. The trustee as one of the owners of the lease participated in the selection of this operator. The trustee got a statement of the operating expense from the person who operated the lease and a check from the pipe line company which bought the oil. She was on the lease once some six years after the trust agreement was signed. H. J. Porter filed some partnership returns in which Lola Armstrong did not join. In 1940 J. J. Lieck and Lola Armstrong filed a partnership return for 1939 and Lola Armstrong stated on the return: Explanation: As in all leases in this field, this lease is operated by some party *101 interested, who bills each individual owner for his pro rata share of expense incident to operating lease. Angus G. Wynne, Longview, has operated it since Jan. 7th, 1939 as trustee for all owners. This return is made because the Internal Revenue Agent advised that it had to be made, as H. J. Porter had been making a partnership return on the lease. Lola Armstrong, Trustee. The Commissioner in his notice of deficiency, among other things, stated: It has been found that during the years 1936 to 1940, inclusive, you were an association taxable as a corporation. Adkins Properties, Lola Armstrong, Trustee, was during the years 1936 to 1940, inclusive, an association taxable as a corporation. Opinion BLACK, Judge: The leading case, we think, on the subject of what is necessary to constitute an association taxable as a corporation is . That case has been followed in many Board and Court cases and it has been distinguished in others where it was not followed. We do not think that it would be profitable to undertake to discuss all of these cases. Each case must, of course, rest *102 upon its own facts. One of the comparatively recent decisions dealing with this subject is . In this case the Tenth Circuit reversed the Board and held that the trust was an association taxable as a corporation, following the Supreme Court's decision in the Morrissey case. The court, in its opinion, pointed out the factors which led to its holding that the trust was an association taxable as a corporation. These factors, the court enumerated as follows: (1) Title to the property was held by the trustee during the existence of the trust. (2) Provision was made for a successor-trustee making the trust a continuing entity. (3) Centralized management was vested in the trustee as representative of the beneficial owners. (4) The enterprise was secured from termination or interruption by the death of any owner of a beneficial interest. (5) Transfer of an entire beneficial interest could be made without affecting the continuity of the enterprise. (6) Personal liability of the beneficiaries, either for contract or tort, was limited to their beneficial interests in *103 the trusts. (The numbering is ours.) An examination of the declaration of trust involved in the instant case will show that all the factors stated above as being present in the Nebo Oil Company Trust case were present here. See also . In that case, under the terms of a trust agreement, three of the taxpayers were trustees for the others. As such the trustees received the net revenue from an undivided 1/3 interest in an oil lease and made pro rata distribution to the parties to the agreement. Under the facts present in that case, the court held that under the provisions of Art. 801-3 of Regulations 86 the taxpayers constituted an association taxable as a corporation and reversed the holding of the lower court to the effect that the owners of the fractional interests in the lease were tenants in common. In this Nashville Trust Co. case, the court, among other things, said: * * * Indeed, except for a number of immaterial circumstances to be presently discussed, the instant case could well be decided, without argument, solely upon the authority of Helvering *104 v. Combs, supra, wherein a common enterprise under a trust instrument for the acquisition of an oil lease, the drilling and operation of an oil well, the sale of its produce and distribution of income among the beneficiaries, was held taxable as an association under the Revenue Act of 1926, * * * Helvering v. Combs to which the court referred in the above quotation from its opinion is reported in . In that case the Supreme Court held the trustees of E. E. Combs well No. 2 to be an association taxable as a corporation and, among other things, said: * * * Parties may form an association for a small business as well as for a large one. Here, through the medium of a trust the parties secured centralized management of their enterprise, and its continuity during the trust term without termination or interruption by death or changes in the ownership of interests, and with limited liability and transferable beneficial interests evidenced by certificates. Entering into a joint undertaking they avoided the characteristic responsibilities of partners and secured advantages analogous to those which pertain to corporate *105 organization. The fact that meetings were not held or that particular forms of corporate procedure were absent is not controlling. Petitioner recognizes that the powers granted the trustee by the grantors were very broad in the instant case but argues that the trustee in practice did not use these broad powers but did no more than hold title to the one-third interest in the lease, collect the proceeds from the oil runs properly apportioned thereto, pay a proportional part of the expenses of operation of the lease, keep the books of account, and, at regular intervals, pay each beneficiary of the trust his part of the net proceeds. The facts in evidence disclose that the above is about the sum and total of the activities of the trustee. Argument by the taxpayer along similar lines seems to have been made in , but the court in holding that the taxpayer was an association taxable as a corporation, among other things, said: * * * These are express provisions of the instrument *106 and the parties may not now say that their purpose was "other or narrower than that which they formally set forth in the instrument under which their activities were conducted." Helvering v. Coleman-Gilbert Associates, supra * * *. Furthermore, the fact that the petitioner had no office, telephone, or office furniture, and had no seal and held no meetings as corporations ordinarily do, does not establish that it was not an association taxable as a corporation. The inclusion of associations with corporations by § 1001 (a) (2) implies resemblance between the two, but as pointed out by the Supreme Court in * * *, "it is resemblance and not identity" that is intended, and definitions are not to be pressed so far as to make mere formal procedure a controlling test, and that while use of corporate forms may furnish persuasive evidence of the existence of an association, "the absence of particular forms, or of the usual terminology of corporations, cannot be regarded as decisive." See also . The *107 instant case is distinguishable from those cases where persons who owned an interest as tenants in common in an oil lease each executed powers of attorney to the syndicate managers, empowering them to act for and in behalf of all co-owners in all matters relating to the property of the syndicate thereby vesting the management and control in a central management but making no provision for the perpetuation of the management so created or for the succession or substitution of attorneys in fact. In such cases it has been held that the syndicate was not an association taxable as a corporation. See , affirming Board Memorandum Opinion; , affirming Board Memorandum Opinion. In both of the above cases, the court, C.C.A. Fifth Circuit, laid emphasis on the fact that the owners of undivided interests in a mineral lease obtained centralized management, not by shareholders' votes but by agency relationship, and that there was no limitation of personal liability, *108 no stock was issued and no trust was ever created. One of the cases strongly urged by petitioner as an authority against holding that petitioner is an association taxable as a corporation is . We have examined and considered that case carefully and we find that the Supreme Court's decision is based upon the proposition that the creation of a mere agency by owners of property to act for them does not create an association taxable as a corporation. The gist of the Supreme Court's decision in that case seems to be expressed in the concluding part of its opinion which reads as follows * * * There is to be found in the operation of the business no essential characteristic of corporate control - nothing analogous to a board of directors or shareholders, no exemption from personal liability, no issue of transferable certificates of interests. There is simply the common relation of principal and agent, coupled with the collateral incidents of an ordinary trust. We are not able to find in the situation an "association" within the meaning of the statute under consideration, *109 because there are no associates, and no feature "making [the trust] analogous to a corporate organization." * * * Doubtless, in the instant case, if the fractional owners of the one-third interest in the oil lease in question, after it had been awarded them by the judgment of the court, had executed powers of attorney authorizing Lola Armstrong to execute division orders with the pipe line companies, collect the proceeds from oil runs, pay their proportional part of the expenses and distribute the net proceeds to the fractional owners and things of that sort, there would have been no association taxable as a corporation under the Supreme Court's decision in , and under the Fifth Circuit's decision in , and But the fractional owners of the one-third interest in the lease did not do it that way. They executed the comprehensive declaration of trust which we have set out in our findings of fact with its broad *110 powers granted to the trustee. Under the authorities which we have cited and discussed, we hold that petitioner was an association taxable as a corporation and affirm the Commissioner on the only issue which has been presented to us for decision. Decision will be entered for the respondent.